(No. 12807.—Reversed and remanded.)

THE ASH-MADDEN-RAE COMPANY et al. and JAMES S. O'BRIEN et al. Plaintiffs in Error, vs. THE INTERNATIONAL LADIES GARMENT WORKERS' UNION et al.— (SOL SEIDMAN, Defendant in Error.)

*Opinion filed December 17, 1919.*

1. INJUNCTION—*an injunction must be obeyed unless void for want of jurisdiction.* In a proceeding for contempt for violating an injunction issued by a court having jurisdiction it cannot be urged that the granting of the injunction was erroneous, as the orders and judgments of a court having jurisdiction must be obeyed until reversed or set aside in a direct proceeding.

2. SAME—*punishment for violation of injunction rests in discretion of court.* The court granting an injunction is clothed with a large discretion in enforcing obedience to it, and in a proceeding for contempt for violating the injunction the extent of the punishment to be inflicted rests in the sound legal discretion of the court, and courts of appellate jurisdiction will not interfere except for abuse of that discretion.

3. APPEALS AND ERRORS—*when Appellate Court should not reverse without remanding.* In a proceeding for contempt for violating an injunction, where the Appellate Court is of the opinion that the punishment of imprisonment fixed by the trial court is either excessive or is not the proper punishment, the judgment should not be reversed without remanding the cause, but in either case the Appellate Court should either modify the punishment or remand the cause to the lower court.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

ROSENTHAL, HAMILL & WORMSER, and LEWIS F. JACOBSON, (CHARLES H. HAMILL, and LEO F. WORMSER, of counsel,) for plaintiffs in error.

DARROW, SISSMAN & POPHAM, (VICTOR S. YARROS, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court upon petition for writ of *certiorari* to review a judgment of the Appellate Court for the First District reversing a judgment and order of the circuit court of Cook county adjudging Sol Seidman guilty of contempt for violation of certain injunctions and sentencing him to jail for a period of seventy-five days.

The plaintiffs in error, the Ash-Madden-Rae Company, James S. O'Brien, and other firms or corporations, were engaged in Chicago in the manufacture of women's garments and employed in their respective establishments a considerable number of persons of both sexes. The workers in these establishments, or some of them, belonged to subordinate local unions of the International Ladies Garment Workers' Union. In the early part of February, 1917, the unions sent by mail to plaintiffs in error demands for agreements as to working days and hours, scale of wages and preferential union shop, with provisions for adjustment of complaints. The communication requested a reply within a reasonable time, and stated that if none was received and no negotiations entered into the union would strike as a means of securing its demands. No reply was made and a strike was called February 15. On the 17th bills were presented to a master in chancery for injunctions. The bills are lengthy and will not be set out further than to show that they alleged the defendants had conspired to coerce complainants by unlawful acts to submit to the demands made, to force employees to quit their employment and to prevent others from working for complainants. The bills alleged numerous acts of defendants to accomplish their alleged purpose, including acts of violence, threats and intimidation by pickets provided for the purpose of preventing employees from continuing in the service of complainants or other persons from engaging in their service. The International Ladies Garment Workers' Union, its local unions and a

number of individuals were made defendants.   The bills were sworn to and accompanied by exhibits and affidavits of employees and others detailing acts and conduct of the strikers, by threats of violence and otherwise, to prevent employees from continuing in the service of complainants and to prevent others from entering their employment.   The master recommended the injunctions be granted, and they were issued on the order of a judge of the circuit court. The injunctions, among other things, restrained the defendants from interfering with and hindering the employees of complainants, from maintaining pickets at or near complainants' premises or along routes followed by employees in going to and from their work, and from assaulting them or intimidating them by threats, etc.   Bonds were given by complainants, and the issuing of the injunctions were made known by posting placards in the vicinity of the establishments of complainants, by mail by special delivery, and by publication in newspapers.   On the 21st and 23d of February petitions were filed by plaintiffs in error charging Sol Seidman and others with violations of the injunctions and praying for a rule against them to show cause why they should not be adjudged in contempt.   The persons against whom the rule was issued filed sworn answers denying the material charges in the petitions.   Upon the trial the chancellor heard oral testimony and evidence submitted by way of affidavits and exhibits.   Some of the persons were adjudged guilty and penalties imposed.   Sol Seidman was adjudged guilty of contempt for violating the injunctions and sentenced to jail for a period of seventy-five days. He prosecuted an appeal to the Appellate Court for the First District.   That court reversed the judgment without remanding the cause, and this writ of error is sued out to review that judgment.

Counsel for defendant in error say the only questions presented to this court for determination are:   "(1) Was

the punishment imposed by the chancellor so excessive as to amount to an abuse of sound judicial discretion, thus warranting the Appellate Court to reverse the order of commitment? (2) Did the Appellate Court err, in any event, in reversing the decree instead of reducing the term or remanding the cause?" No question is raised by defendant in error as to the power and authority of the court to issue the injunctions.

Defendant in error was the vice-president of the International Ladies Garment Workers' Union and came to Chicago from New York in November, 1916. He was in charge of the strike, gave orders with reference thereto and appointed committees, including a picketing committee. On February 20, 1917, he spoke at a meeting attended by about eight hundred persons and told them to go out and picket,—to not be afraid of injunctions, police or sluggers; that if arrests were made the union had bondsmen in readiness to get them out. He said injunctions would not help the manufacturers and advised his hearers to go out and picket, no matter how many injunctions were issued. He advised getting the addresses of "scabs" and picketing their homes and stated he was going to defy the injunctions. It cannot be denied that this was a violation of the injunction writs. In fact, defendant in error admits it was a technical violation of the injunctions. His explanation and justification for his conduct are that he had had much experience in strikes in New York City, where peaceful picketing was lawful and was protected by the police, and that he was honestly of the opinion picketing was lawful in Chicago and his advice was given in the honest belief that what he advised was lawful; that on the 21st of February he consulted with attorneys and was advised by them that picketing was illegal in Illinois, and after having been so advised he never told the strikers to continue picketing but told them such action on their part would be at their own risk and that they would have to stand the consequences. Whether he ever

made any public statement to that effect is not shown, and the proof tends to show that picketing continued as it had previously.

Defendant in error knew the injunctions forbade picketing, but because it was his opinion that the injunctions were invalid he counseled and advised disregarding them. He was advised by counsel that his opinion was wrong,—that the injunctions were valid,—and says that thereafter he did not advise ignoring and violating them. It is not disputed that defendant in error violated the injunctions, and the question presented is whether the violation of an injunction which is admitted to have been within the lawful powers and authority of the judge to issue, by one who believed it was not lawful, constitutes a contempt.

It is so universally settled law as to require no citation of authorities, that the orders and judgments of a court having jurisdiction must be obeyed until reversed or set aside in a direct proceeding for that purpose, and in a proceeding for contempt for violating an injunction it cannot be urged that granting the injunction was erroneous. Unless absolutely void it is binding on the parties and must be obeyed. The Appellate Court did not reverse the judgment of the circuit court because it found defendant in error had not violated the injunctions. In its opinion that court says "it is evident appellant [defendant in error here] was guilty of a technical violation of the injunctions," but because he honestly thought the injunctions were unlawful and refrained from further violations when he was advised to the contrary the court was of opinion punishment by imprisonment should not have been imposed, and that court reversed and set aside the judgment of the circuit court without remanding the case, which was a discharge of defendant in error. In any view we can take of the case the judgment of the Appellate Court cannot be sustained. The judgment of the circuit court was not reversed as a result of the Appellate Court finding the facts different from the

290—20

circuit court, for there is no substantial dispute as to facts, and the Appellate Court made no finding of facts, as is required by statute when it reverses a judgment without remanding the case, as a result of finding the facts different from the trial court. The reason for the reversal of the judgment of the lower court, as stated in the opinion, is that punishment by imprisonment should not have been imposed. Reversing for that supposed error would require the modification of the penalty imposed or remandment to the circuit court.

The court granting the injunction is clothed with a large discretion in enforcing obedience to it, and in a proceeding for its violation the extent of the punishment to be inflicted rests in the sound legal discretion of the court, and courts of appellate jurisdiction will not interfere with the exercise of such discretion except for its abuse. (*Hake* v. *People,* 230 Ill. 174; *Leopold* v. *People,* 140 id. 552; *In re Independent Publishing Co.* 240 Fed. Rep. (C. C. A.) 849; *Carr* v. *District Court,* 147 Iowa, 663.) Unless the expression in the Appellate Court's opinion that it did not think punishment by imprisonment should have been inflicted indicates that that court found the judgment to be an abuse of the lower court's discretion, it cannot be said that the reversal resulted from the Appellate Court determining that the punishment was excessive and unlawful. In any event, the Appellate Court should, if it concluded it had the power to do so, have modified the punishment or remanded the case to the lower court.

The judgment of the Appellate Court is reversed and the case remanded to that court, with directions to render such judgment, not inconsistent with the views expressed in this opinion, as it may deem lawful and proper.

*Reversed and remanded, with directions.*